IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STATE OF ARKANSAS,** *ex rel.*
**TIM GRIFFIN, ATTORNEY GENERAL**                                                              **PLAINTIFF**

VS.                                          4:24-CV-00701-BRW

**OPTUM, INC.,** *et al.*                                                                              **DEFENDANTS**

<u>ORDER</u>

Pending is Plaintiff's Motion to Remand (Doc. No. 25). Defendants have responded.[1] For the reasons stated below, Plaintiff's motion is GRANTED.

**I.    BACKGROUND**[2]

Plaintiff filed this case in the Circuit Court of Pulaski County, Arkansas on July 21, 2020, asserting state law claims for public-nuisance, negligence, and unjust enrichment to hold Defendants liable for their alleged role in Arkansas's opioid epidemic. Plaintiff disclaimed any federal claim or relief.

On August 16, 2024, Defendants removed the case under 28 U.S.C. § 1442(a)(1) citing federal officer jurisdiction and 28 U.S.C. § 1331 to support federal question jurisdiction.[3] First, Defendants contend removal is proper because Plaintiff seeks to hold them liable for actions they took at the direction of federal officials on various federal health care systems and benefit plans.[4] Second, Defendants contend federal jurisdiction exists because Plaintiff's public-nuisance claim

---

[1] Doc. No. 27.

[2] Unless otherwise noted, the Background information is from Plaintiff's Complaint (Doc. No. 2).

[3] Doc. No. 1.

[4] *Id.*; Doc. No. 27, pp. 15-18.

1

necessarily raises the issue of whether Defendants owed and breached duties under the federal Controlled Substances Act ("CSA"),[5] and its implementing regulations.[6] Finally, Defendants contend that Plaintiff's disclaimer of all federal claims and relief is ineffective.[7]

On September 16, 2024, Plaintiff filed a motion to remand,[8] asserting no basis for removal exists because (1) none of Plaintiff's causes of action are based on federal law; (2) Defendants were not acting on behalf of the federal government; (3) there is no federal defense; (4) there is no causal connection between Defendants' conduct and federal authority; and (5) Plaintiff's disclaimers are effective.

## II. DISCUSSION

### A. Federal-Officer Removal

The federal-officer removal statute allows for removal of a civil action by "any officer (or any person acting under that officer) of the United States or of any agency thereof" who is sued "for or relating to any act under color of such office."[9] To qualify for removal under that statute, a private entity (like each of the companies sued here) must show that: (1) it is a "person" under the statute; (2) it "acted under the direction of a federal officer"; (3) a "causal connection" exists between its complained-of conduct and official federal authority; and (4) it has a "colorable federal defense" to the claims against it.[10] The absence of any element will

---

[5] 21 U.S.C. §§ 801, *et seq*.

[6] Doc. No. 1.

[7] *Id.*

[8] Doc. No. 25.

[9] 28 U.S.C. § 1442(a)(1).

[10] *Buljic v. Tyson Foods*, Inc., 22 F.4th 730, 738 (8th Cir. 2021).

defeat removal to federal court.[11]  The statute is "an exception to the well-pleaded complaint rule."[12]  It should be "liberally construed, so the typical presumption against removal does not apply."[13]

Even if a defendant establishes all four prongs, if a plaintiff validly disclaims (or waives) any claim that would give rise to federal-officer removal and if remand is otherwise appropriate, then remand may be warranted.[14]

The relevant issues are whether Defendants acted under the direction of a federal officer and potentially incurred liability under Arkansas law and whether Plaintiff's disclaimers are effective.

The Supreme Court held that the basic purpose of § 1442(a)(1) is "to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Government 'acting . . . within the scope of their authority.'"[15]  The Court reasoned that Congress wanted to protect the federal government, its officers, and those acting under its authority from state-court proceedings which may be filled

---

[11]*Doe v. BJC Health Sys.*, 89 F.4th 1037, 1041–42 (8th Cir. 2023).

[12]*Buljic*, 22 F.4th at 738 (internal quotation marks omitted).

[13]*Id.* (internal quotation marks omitted).

[14]See *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 1:21-CV-29, 2021 WL 5194662, at *6 (S.D. Ohio Nov. 8, 2021); see also *Wilde v. Huntington Ingalls, Inc.*, 616 F.App'x 710, 715, n.28 (5th Cir. 2015) ("Courts regularly recognize post-removal claim disclaimers in federal officer proceedings.") (citing *Dougherty v. A O Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 3542243, at *9 (D. Del. July 16, 2014) (collecting cases)).

[15]*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 142-43 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).

with "local prejudice against unpopular federal laws or officials and States hostile to the Government [which] may impede enforcement of federal law, or deprive federal officials of a federal forum in which to assert federal immunity defenses."[16] Therefore, the statute was meant to protect private persons "who lawfully assist" a federal officer "in the performance of his official duty," but "only" if the private parties were "authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law."[17]

In its Complaint, Plaintiff alleges that Defendants are part of a scheme that caused the opioid crisis in Arkansas. Specifically, Plaintiff asserts Defendants colluded with drug companies in fraudulent and deceptive marketing to oversupply opioids. To execute this scheme, Plaintiff contends Defendants placed opioids on national formularies to increase sales; limited restrictions on these formularies that would have reduced opioid prescribing; failed to implement effective drug use review processes; ignored information they had about the opioid epidemic to limit opioid use; and dispensed huge quantities of opioids through their mail-order pharmacies without proper controls against diversion.

Defendants cannot reasonably claim that any of these alleged actions were on behalf of an officer of the United States and under color of office. The fact that a private company acts under the direction of a federal officer at some point in its business with respect to federal health benefits programs does not bring all of the company's actions under the umbrella of federal officer authority.[18] Defendants engaged in developing federal and non-federal health benefit programs, but that is immaterial to this case because Plaintiff does not make any claim based on

---

[16] *Id.*

[17] *Id.*

[18] See, e.g., *City of Annapolis, Maryland v. BP P.L.C.*, No. CV SAG-21-00772, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022).

negotiating or administering a federal health benefit plan or seek relief relating to any such plan. Moreover, no federal officer directed, supervised, or controlled Defendants' actions with respect to the alleged scheme to oversupply opioids. So, none of the alleged conduct is related to acts Defendants performed under federal authority.[19]

Additionally, Plaintiff's disclaimers negate the "causal nexus" prong of the federal-officer removal test. In the Complaint, Plaintiff states that it

> brings this action exclusively under the laws of the State of Arkansas. No federal claims are being asserted, and to the extent that any claim or factual assertion set forth herein may be construed to have stated any claim for relief arising under federal law, such claim. In addition, under no circumstances is the State bringing this action against, or bringing an action or claim of any kind directed to, any federal officer or person acting under any office of the United States for or relating to any act under color of such office. Nothing in this Complaint raises such an action, and to the extent that anything in the Complaint could be interpreted as potentially bringing an action against or directed to any federal officer or person acting under any office of the United States for or relating to any act under color of such office, then all such claims, actions, or liability, in law or in equity, are denied and disavowed in their entirety.[20]

As the First Circuit has explained, "[t]o defeat removal, an express disclaimer must explicitly renounce claims upon which federal officer removal was based. If a plaintiff renounces such claims, then a defendant is not entitled to a federal forum in which to raise a defense arising out of his official duties, because such a defense pertains to claims that simply do not exist."[21]

---

[19] Plaintiff alleges that "Defendants are hired to administer and manage prescription drug benefits on behalf of commercial health plans, self-insured employer plans, and government health benefits programs." Doc. No. 2 at 32. Plaintiff also asserts that "Defendants administer prescription drug benefits for health plans and purchase drugs from manufacturers on behalf of those plans." *Id.* However, that is the extent to which any federal benefit plan or program is mentioned. At no point do the allegations in the Complaint mention, let alone are they directed at, the relationship between Defendants and the federal government.

[20] Doc. No. 2, pp. 15-16.

[21] *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (cleaned up).

"[C]ourts recognize a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the grounds for removal under Section 1442(a)(1)."[22]  Disclaimers have been found ineffective to defeat removal where the disclaimer "(1) generally purported to waive all federal claims based on boilerplate language; or (2) disavowed claims based on a defendant's acts or omissions carried out under color of office, but the plaintiff, nonetheless, sought to recover based on a defendant's official acts."[23]

However, "federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based."[24]  Here, Plaintiff's disclaimer is a close call because at first glance it appears cookie-cutter and generic.  After examining the disclaimer in conjunction with Plaintiff's claims, it unambiguously disclaims any claims or relief upon which federal-officer removal could be based.  There is no scenario where Defendants could be liable based on its involvement with the federal government.

Defendants assert that the recent decision in *Puerto Rico v. Express Scripts* supports its position that a plaintiff's disclaimer cannot defeat federal-officer removal where federal and non-federal activities are intertwined, and that a disclaimer must foreclose the need for any apportionment of federal and nonfederal conduct.[25]  In that case, the First Circuit explained that "a valid disclaimer must eliminate any basis for federal officer removal so that, upon remand,

---

[22]*Dougherty v. A O Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 3542243, at *10 (D. Del. July 16, 2014).

[23]*Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363 (S.D. Fla. 2016) (citing *Siders v. 20TH Century Glove Corp. of Texas*, No. 2:15-CV-13278, 2016 WL 1733473, at *4 (S.D.W. Va. Apr. 29, 2016) (collecting cases)).

[24]*Dougherty*, 2014 WL 3542243, at *10.

[25]Doc. Nos. 27, pp. 24-26; 31.

6

there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority."[26]  It went on to explain that invalid disclaimers "would 'force federal contractors to prove in state court that they were acting under the direction of the government.'"[27]

Defendants draw too broad a conclusion from the First Circuit's description of valid versus invalid disclaimers.  Even though federal and non-federal activities are arguably intertwined in this case (because Defendants' federal and non-federal benefit plans are involved), the state court will not have to determine whether or not Defendants acted under the direction of the government as it relates to the alleged scheme.  Instead, the relevant inquiry is limited to what extent the alleged scheme impacted patients who participated in a federal plan.

Moreover, *Express Scripts* does not demand a similar result here.  There, Puerto Rico sued Caremark for inflating insulin prices through rebate negotiations, and the court credited "Caremark's theory of the case that its federal and non-federal work is indivisible based on the way it negotiates rebates for the federal government and private clients simultaneously."[28]  Essentially, Caremark alleged that it jointly negotiates rebates on behalf of all clients simultaneously, so it was "impossible to sever what the Commonwealth's residents paid between Caremark's negotiations for FEHBA (Federal Employee Health Benefits Act) versus non-FEHBA plans."[29]  Therefore, despite Caremark disclaiming "relief relating to any federal

---

[26]*Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (emphasis in original).

[27]*Id.* at 187-88 (quoting *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1275 (S.D. Fla. 2008)).

[28]*Id.* at 194.

[29]*Id.* at 183.

program (e.g., Medicaid, Medicare) or any contract related to a federal program," the court held that "the disclaimer did not eliminate the possibility that the Commonwealth would recover for Caremark's official acts."[30]

Here, Plaintiff's disclaimer is not "incomplete," because the alleged scheme is not indivisible conduct. Plaintiff specifically disclaims any claims or relief related to Defendants services to the federal government, making irrelevant any question about the scope of Defendants' federal authority.

Accordingly, Defendants are not entitled to removal under the federal-officer removal statute.

### B. Federal Question Jurisdiction

As an alternate avenue for removal, Defendants contend that this case presents the federal question of whether they owed and breached duties imposed by the CSA. Defendants point to the Complaint where Plaintiff contends that the CSA "state[s] the duty owed under Arkansas tort law" applicable to its claims. Defendants argue that Plaintiff's public nuisance claim expressly requires the existence of a duty that "cannot be established without exploration of federal laws and regulations."[31] Therefore, federal questions are "necessarily raised by the Complaint."[32]

However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."[33] Federal jurisdiction can exist when

---

[30]*Id.* at 181-82, 194.

[31]Doc. No. 27, p. 9 (citing *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 838 (D. Minn. 2023)).

[32]*Id.*

[33]*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

8

"state-law claims implicate significant federal issues."[34] The Eighth Circuit has "applied this variety of federal question jurisdiction narrowly, recognizing that it exists only in a 'special and small category of cases.'"[35] The Supreme Court has recognized that "the vast majority of cases brought under the general federal-question jurisdiction . . . are those in which federal law creates the cause of action."[36]

The Supreme Court has established the following test to determine whether federal question jurisdiction exits even when only state-law claims are raised on the face of the complaint: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[37]

"Courts are obliged to strictly construe removal jurisdiction against removal and all doubts should be resolved in favor of remand."[38] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[39]

Plaintiff's claims do not raise a federal issue. Plaintiff has relied on state-law theories for each of their claims. While CSA violations might provide evidence of a breach of Defendants'

---

[34]*Holbein v. Baxter Chrysler Jeep, Inc.*, 948 F.3d 931, 935 (8th Cir. 2020) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)).

[35]*Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)); see also *Holbein*, 948 F.3d at 935.

[36]*Merrell Dow*, 478 U.S. at 808.

[37] *Gunn*, 568 U.S. at 258 (quoting *Grable & Sons Metal Prods., Inc.*, 545 U.S. 308 (2005)).

[38]*Pulaski Cnty. v. Walmart Inc.*, No. 4:20-CV-00983 JM, 2020 WL 5746845, at *2 (E.D. Ark. Sept. 25, 2020) (internal citations omitted).

[39]28 U.S.C. § 1447(c).

duties, it is possible for the claims to be resolved without resolution of any CSA issues. After careful examination of the Complaint, the CSA is not necessarily raised nor substantially implicated by the pleadings.[40]

Furthermore, the CSA does not provide a private, federal cause of action.[41] A "congressional determination that there should be no federal remedy for the violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[42]

Finally, requiring this case to be tried in federal court because it involves a federal element, regardless of the Complaint's clear intent to seek a remedy based on violations of state law, would be disruptive to the federal-state balance approved by Congress.

Accordingly, Plaintiff's motion to remand is granted.

### C. Defendants' Request to Stay

In their response, Defendants request a stay pending appeal if I grant Plaintiff's motion and continue the stay until the appeal is concluded. Since the case was removed under § 1442, it is treated like any other final judgment in the context of Federal Rule of Civil Procedure 62(a) and its mandatory 30-day stay of execution as well.[43] Additionally, I am persuaded that under the

---

[40]See *Pulaski Cnty.*, 2020 WL 5746845 at *2; *Fayetteville Arkansas Hosp. Co., LLC v. Amneal Pharm., LLC*, No. 5:20-CV-5036, 2020 WL 2521515, at *2 (W.D. Ark. May 18, 2020).

[41]*Merrell Dow*, 478 U.S. at 814.

[42]*Id.*

[43]See *Norhtrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16CV534(JCC/IDD), 2016 WL 3180775, at *2 (E.D. Va. June 7, 2016).

10

Supreme Court's reasoning in *Coinbase, Inc. v. Bielski*,[44] I must stay this case while any interlocutory appeal is pending since the issue is whether litigation of Plaintiff's claims can proceed in this court.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand (Doc. No. 25) is GRANTED. Defendants' request to stay execution of remand is GRANTED.

The Clerk of Court is directed to refrain from executing this Order to remand the case back to the Circuit Court for Pulaski County until January 29, 2025. If Defendants appeal this Order, the case will be automatically stayed until resolution of the appeal.

IT IS SO ORDERED this 31st day of December, 2024.

                                          BILLY ROY WILSON
                                          UNITED STATES DISTRICT JUDGE

---

[44] *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).